IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DONALD H. GAMBLE, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 118-204 |
| | ) | |
| CLINTON PERRY, JR., Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner, an inmate at Macon State Prison in Oglethorpe, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** this action be **STAYED AND HELD IN ABEYANCE** while Petitioner exhausts his state remedies. The Court should order Petitioner to commence state proceedings within sixty days of the stay entry, file a notice of compliance concerning commencement within sixty days of the stay entry, and move to lift the stay within sixty days of completing state exhaustion in the event the state courts determine Petitioner is not entitled to relief.

**I.      BACKGROUND**

This case challenges the validity of Petitioner's conviction for malice murder, felony murder, and possession of a firearm during the commission of a crime, as determined by a jury in the Superior Court of Richmond County, Georgia, on May 15, 2008. Gamble v. State, 731 S.E.2d 758, 759 & n.1 (Ga. 2012). On June 12, 2008, the trial court sentenced

Petitioner to concurrent sentences of life imprisonment for malice murder and felony murder and a five-year term for possession of a firearm during the commission of a crime. Id. at 825, n.1. Attorney Jason Hasty represented Petitioner at trial. (Doc. no. 16-9, p. 5.)

Attorney Peter D. Johnson represented Petitioner post-conviction at the hearing on Petitioner's motion for new trial, which the trial court denied. (Doc. no. 16-8, pp. 80-82, 101; doc. no. 16-11, pp. 85-96.) Mr. Johnson filed a direct appeal and raised five enumerations of error: (1) the evidence was insufficient to support the verdict for murder; (2) the trial court erred by instructing the jury to consider intelligence in determining witness credibility; (3) the trial court erred in failing to give Petitioner's requested charge on identification; (4) the trial court erred in charging the jury they were only to be concerned with guilt or innocence; and (5) the trial court erred by giving a coercive Allen charge. Gamble, 731 S.E.2d at 759-61; (doc. no. 16-11, pp. 97-123.) The Georgia Supreme Court found no merit to the alleged errors. Gamble, 731 S.E.2d at 759-61. However, the Court determined the trial court erred by sentencing Petitioner to concurrent sentences of life imprisonment since there was a single victim, vacated the separate judgment of conviction and sentence for felony murder, and remanded the case for resentencing. Id. at 761. Petitioner was resentenced on October 19, 2012.[1]

---

[1] See Richmond County Clerk of Court Web Docket, available at https:/cocaugustaga.gov/ mainpage.aspx (follow "Criminal Search" hyperlink; then search for "Gamble, Donald," open 2007 RCCR01815, last visited Aug. 6, 2019); see also United States v. Jones, 29 F.3d 1549,

In its opinion, the Georgia Supreme Court provided the following description of facts about the murder based on the evidence offered against Petitioner at trial:

> Richard Owen drove Quamine Rickman, his roommate, to see someone about drugs that Rickman had not received during a cocaine buy earlier that evening.  Owen parked in front of a white sport utility vehicle with two men standing in the street next to it.  He watched through his driver's side mirror as Rickman talked to Gamble.  Rickman began walking back to the car with Gamble following him, and they exchanged words.  As Rickman opened the passenger side door, Owen heard a shot and saw Gamble moving towards the driver's side of the car with a gun in his hand. Owen next heard glass break and then saw Gamble fire a third shot through the open window on the driver's side. Rickman was hit and died on the way to the hospital. An anonymous informant told police the nickname of the gunman.  Owen provided a similar nickname and identified Gamble from a photographic lineup as the gunman. In a subsequent interview, Owen told police that Gamble was a back yard neighbor who had come to the house several times to sell drugs to Rickman. Gamble was arrested two months later in Dade County, Florida, based on an anonymous tip. In processing Owen's car, police found that bullets had entered on the driver's side through the rear wheel well cover and rear vent window. Three cartridge casings and two spent projectiles were found in the street. The medical examiner testified that Rickman died from a bullet that entered his left shoulder and cut his aorta before exiting on his right side, which was consistent with the path of the second bullet shot through the rear window.

Id. at 759-60.

Petitioner filed a state habeas corpus petition *pro se* on June 12, 2013, in Ware County, and subsequently amended his state petition on October 28, 2013, and August 19,

---

1553 (11th Cir. 1994) (noting court may take judicial notice of another court's records to establish existence of ongoing litigation and related filings).

2014. (Doc. nos. 16-1, 16-2, 16-3.) In his initial state petition, Petitioner raised eight claims. (Doc. no. 16-1.) In his first amended state petition, Petitioner raised nine additional claims, for a total of seventeen claims. (Doc. no. 16-2.) In his second amended state petition, Petitioner raised twenty-one claims, several of which were identical to claims raised in his previous petitions. (Doc. no. 16-3.) The state habeas court conducted an evidentiary hearing on September 16, 2014, and Mr. Hasty, Mr. Johnson, and Donald H. Gamble, Sr., Petitioner's father, testified. (Doc. nos. 16-7, pp. 1-109; 16-8, pp. 1-4.) Although Petitioner raised approximately twenty-five individual claims in his state habeas petitions, the state claims relevant to Petitioner's current federal petition are as follows:

(1) Appellate counsel provided ineffective assistance by failing to argue on direct appeal trial counsel was ineffective for:

    (a) failing to object to the prosecution's claim Petitioner is from Duval County, Florida and failing to investigate and present exculpatory evidence to that effect, (doc. no. 16-1, p. 6; doc. no. 16-3, p. 9);

    (b) failing to request a continuance to properly prepare to cross-examine the prosecution's "surprise" witness, Jeffrey Sams (doc. no. 16-1, p. 8; doc. no. 16-3, p. 11);

    (c) failing to object to the photo lineup as unduly suggestive, (doc. no. 16-2, p. 4; doc. no. 16-3, p. 14); and

    (d) failing to challenge the "bogus" indictment used at trial, which omitted one of the four counts charged, was not returned in open court, and was signed by Petitioner and Mr. Hasty only on the last day of trial, (doc. no. 16-3, pp. 2-3).

(2) The trial court violated Petitioner's due process rights by giving a jury instruction regarding intent, which impermissibly shifted the burden of proof to Petitioner, (id. at 13).

The state habeas court denied relief in a final order dated April 1, 2016, and filed April 4, 2016.  (Doc. no. 16-4.)   The Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal on August 20, 2018.  (Doc. no. 16-6.)

Petitioner timely filed the above-captioned § 2254 petition *pro se*, raising the following grounds for relief:

(1) Appellate counsel rendered ineffective assistance by not arguing trial counsel was ineffective for failing to object to the prosecution's claim Petitioner is from Duval County, Florida and failing to investigate and present exculpatory evidence to that effect.

(2) Appellate counsel rendered ineffective assistance by not arguing trial counsel was ineffective for failing to request a continuance to properly prepare to cross-examine the prosecution's "surprise" witness, Jeffrey Sams.

(3) Appellate counsel rendered ineffective assistance by not arguing trial counsel was ineffective for failing to object to the photo lineup as unduly suggestive.

(4) Appellate counsel provided ineffective assistance by failing to challenge on appeal the jury instruction regarding intent, which impermissibly shifted the burden of proof to Petitioner.

(5) Appellate counsel rendered ineffective assistance by not arguing trial counsel was ineffective for failing to challenge the redacted indictment used at trial, which was not returned in open court.

(6) Appellate counsel rendered ineffective assistance by not arguing trial counsel was ineffective for failing to investigate and impeach witness Richard Owen at trial.

  (7)  The prosecution failed to disclose impeachment material regarding Mr. Owen's criminal history prior to trial.

(See generally doc. no. 12.)

  Petitioner's claims in Grounds Six and Seven concern the criminal history of Richard Owen, the sole eyewitness whom the Georgia Supreme Court described as the victim's roommate and Petitioner's backyard neighbor. Petitioner states he did not raise these claims in his state habeas petition because he only received information about Mr. Owen's criminal history on March 2, 2017, when he received a letter from Mr. Johnson dated February 27, 2017, eleven months after the state habeas court denied relief in a final order dated April 1, 2016. The body of the letter states in full as follows:

> The information that I have provided in this mailing has been sitting on my desk for some time, principally because I have been undecided what to do with it. I note that the last time I checked on this that you do have a pending case on *habeas* in Ware County that is still unresolved. Perhaps you will be able to incorporate this information in that petition. If not, then I supposed [sic] we could try an extraordinary motion for new trial. Please advise me on the course of action you wish to pursue.
>
> Essentially, the principle witness against you in your murder prosecution is a liar, cheat and fraud who may well have killed someone before. This, at a minimum, would have been formidable impeachment material. There was never any attempt at your trial to cast any doubt on the character and credibility of this witness. It appears that a claim of ineffective assistance of trial counsel would be an effective and perhaps even persuasive avenue of appeal.
>
> So, I enclose for your review, the following:

1. A federal filing styled as Government's Local Rule '16.2 and Fed. R. Evid, 404(b) Notice'
2. A letter in response to the federal filing from the District Attorney, Augusta Judicial Circuit.

My suggestion:

1) Amend your habeas petition; or,
2) File an extraordinary motion for new trial.

(Doc. no. 8, pp. 4-8.)

Mr. Johnson attached a letter addressed to him, dated August 25, 2015, from Ashley Wright, who at the time was District Attorney for the Augusta Judicial Circuit. (Id. at 5-8.) At the time of Ms. Wright's letter, Petitioner's state habeas petition was still pending and would not be denied until seven months later on April 1, 2016. Mr. Johnson held onto Ms. Wright's letter without providing it to Petitioner for approximately one year and seven months, from August 2015 to February 2017.

Ms. Wright explained (1) Mr. Rickman, the murder victim in Mr. Gamble's case, was a "good friend" of Mr. Owen; (2) Mr. Owen pled guilty to federal bank fraud and money laundering crimes in the Southern District of Georgia on March 10, 2015; and (3) during his federal trial, prior to changing his plea to guilty, Mr. Owen "made some statements which purported to relate to the prosecution of Donald Gamble." The letter then alleges Mr. Owen admitted on the record at trial, in a conversation with a federal prosecutor, he "shot a drug dealer." The letter also states that Mr. Adam King, the lead prosecutor for the State at

Petitioner's trial, recalled Mr. Owen being impeached at trial with respect to only a prior insurance fraud conviction. (Id.) Ms. Wright noted her office generally does not obtain criminal histories for witnesses, and they did not do so in this case. (Id.)

Ms. Wright then set forth a list of Mr. Owen's criminal convictions, which included the following: (1) a 1964 conviction for commission of a crime while armed with a deadly weapon (later vacated and reduced to attempted escape); (2) a 1972 conviction for assault and battery with intent to kill; (3) a 1977 conviction for burglary; (4) two 1989 convictions for forgery in the first degree; (5) a 1990 conviction for "bad checks"; (6) a 1997 misdemeanor conviction for criminal damage to property; (7) 1995 criminal convictions for four counts of theft by deception, two counts of insurance fraud, and two counts of false swearing; (8) a 1998 conviction for theft by conversion; and (9) a 1999 conviction for theft by conversion. (Id. at 7-8.)

**II.     DISCUSSION**

    **A.     The Exhaustion Requirement**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996, ("AEDPA"), and in accordance with the traditional exhaustion requirement, an application for a writ of habeas corpus shall not be granted unless it appears that the petitioner has exhausted the remedies available to him by any state court procedure. See 28 U.S.C. §§ 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the

State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003). The exhaustion requirement applies with equal force to all constitutional claims. See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1353-54 (11th Cir. 2012); see also Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992). "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted).

"Generally, when a petitioner has failed to exhaust state remedies, the district court should dismiss the petition without prejudice to allow exhaustion." Reedman v. Thomas, 305 F. App'x 544, 546 (11th Cir. 2008) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)). However, the exhaustion doctrine does not require a petitioner to seek collateral review in

state courts of issues raised on direct appeal.  Walker v. Zant, 693 F.2d 1087, 1088 (11th Cir. 1982).  Moreover, in Georgia, a petitioner's "failure to apply for a certificate of probable cause to appeal the denial of his state habeas petition to the Georgia Supreme Court means that [the petitioner] has failed to exhaust all of his available state remedies."  Pope v. Rich, 358 F.3d 852, 853 (11th Cir. 2004).

When a petitioner files a "mixed" petition, including both exhausted and unexhausted claims, a court has the option of issuing a stay and holding the petition in abeyance to allow the petitioner to return to the state court to exhaust his remedies as to the unexhausted claims.  Rhines v. Weber, 544 U.S. 269, 275-77 (2005).  However, the stay and abeyance procedure should only be used in limited circumstances when a court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Id. at 277.

**B. Because Petitioner's Grounds Six and Seven Claims are Unexhausted and He Has a Colorable Argument for Filing a Successive State Petition, This Court Must Give the State Courts a Fair Opportunity to Hear These Claims**

Under O.C.G.A. § 9-14-51, all grounds for relief not raised by a petitioner in his original or amended petition are waived unless:  (1) the Constitution of the United States or the Georgia Constitution requires consideration of the claims, or (2) any judge to whom the petition is assigned finds the grounds for relief could not reasonably have been raised in the original or amended petition.  There do not appear to be any Georgia Supreme Court cases

10

authorizing a successive petition under the first exception based on a finding the United States Constitution or the Georgia Constitution requires consideration of a waived claim. See Donald E. Wilkes, Jr., The Great Writ Hit: The Curtailment of Habeas Corpus in Georgia Since 1967, 7 J. MARSHALL L.J. 429 (2014) ("There do not appear to be any Georgia Supreme Court cases where the first exception was found to authorize a successive petition."). As for the second exception, there is a colorable argument Petitioner has not waived his claims and can assert them in a successive state petition because he could not have reasonably raised them in his original petition.

"Section 9-14-51 'can and should be enforced in federal habeas proceedings against claims never presented in state court unless there is some indication that a state court judge would find the claims in question could not reasonably have been raised in the original or amended [state habeas] petition.'" Isaac v. Brown, Civ. No. 5:10-CV-252 (CAR), 2011 WL 1980525, at *1 (M.D. Ga. May 10, 2011) (quoting Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998), *affirmed in part, vacated in part, and remanded by* Isaac v. Augusta SMP Warden, 470 F. App'x 816 (11th Cir. 2012) (holding dismissal without prejudice to allow for exhaustion of claims proper but district court required to consider whether stay and abeyance appropriate)). Furthermore, "[t]he Georgia Supreme Court has declined to lay down precise guidelines on when a claim could not reasonably have been raised in an

original petition for purposes of section 9-14-51," but relies on a fact-specific inquiry.  Id. at *1-2 (citing Tucker v. Kemp, 351 S.E.2d 196 (Ga. 1987)).

Petitioner's claims in Grounds Six and Seven concern the criminal history of Richard Owen, the sole eyewitness.  In Ground Six, Petitioner claims Mr. Johnson rendered ineffective assistance of counsel on appeal by not arguing Mr. Hasty was ineffective at trial for failing to obtain a record of Mr. Owen's criminal history and impeach him with it at trial. (Doc. no. 12, p. 17; doc. no. 14, pp. 17-21.)  Similarly, in Ground Seven, Petitioner claims the State failed to disclose Mr. Owen's criminal history, which could have been used as impeachment material at trial.  (Doc. no. 12, p. 18; doc. no. 14, pp. 21-24.)  Petitioner states he did not raise these claims in his state habeas petition because he only received information about Mr. Owen's criminal history on March 2, 2017, when Mr. Johnson finally forwarded the letter he received from District Attorney Wright.  Nothing in the record indicates Petitioner would have been able to obtain information about Mr. Owen's criminal history prior to Mr. Johnson's letter.  Petitioner has a good faith argument under O.C.G.A. § 9-14-51 he could not have reasonably raised his ineffective assistance claims during the first state habeas action.

As a matter of comity, the state courts must generally be afforded a fair opportunity to hear claims challenging custody resulting from a state court judgment.  Picard v. Connor, 404 U.S. 270, 275 (1971).  State courts must be given the initial opportunity to consider and correct

12

alleged violations of their prisoners' federal rights. Rhines, 544 U.S. at 273 (citing Rose, 455 U.S. at 518-19). Requiring exhaustion protects the state court's role in the enforcement of federal law and prevents disruption of state court proceedings. Rose, 455 U.S. at 518. This Court will defer to the state courts as the "principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, the Court declines to presume Petitioner's claims are procedurally barred by O.C.G.A. § 9-14-51, and Petitioner must first present his unexhausted claims to the state courts before this Court can consider them.

### C. The Mixed Petition Should Be Stayed and Held in Abeyance

Generally, if a petitioner files a "mixed" petition, including both exhausted and unexhausted claims, and the petitioner declines an opportunity to amend the petition to remove the unexhausted claims, the petition should be dismissed without prejudice, allowing the petitioner to either exhaust state remedies or file a new petition with only exhausted claims. Isaac, 470 F. App'x at 818-19 (citing Rose, 455 U.S. at 519–20). However, petitioners with mixed petitions run the risk of losing their opportunity for any federal review of their claims because a petitioner cannot control when district courts will resolve the exhaustion question, rendering numerous petitions time-barred when re-filed in federal court. Rhines, 544 U.S. at 275. AEDPA contains a one-year statute of limitations for federal habeas corpus petitions in 28 U.S.C. § 2244(d)(1) that is tolled while a "properly filed

application for state postconviction or other collateral review" is pending but is not tolled while a federal petition is pending. Duncan v. Walker, 533 U.S. 167, 181-82 (2001); see also Thomas v. Sec'y, Dep't of Corr., No. 15-14906-E, 2017 WL 5070228, at *2 n.1 (11th Cir. July 26, 2017).

Because of this concern with AEDPA's one-year limitations period, a court may stay the case and hold the petition in abeyance to allow the petitioner to return to the state court to exhaust his remedies as to the unexhausted claims. Rhines, 544 U.S. at 277-78; see also Isaac, 470 F. App'x at 819 (citing Rhines). A stay and abeyance is only permitted when (1) there is good cause for the petitioner's failure to exhaust his claims first in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication the petitioner engaged in intentionally dilatory litigation tactics. Rhines, 544 U.S. at 277-78; Isaac, 470 F. App'x at 819. If these conditions are satisfied, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition." Rhines, 544 U.S. at 278. The stay and abeyance procedure is limited to these extraordinary circumstances because of the potential to (1) frustrate "AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings"; and (2) undermine "AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." Id. at 277.

Under Rhines, the first consideration is whether dismissal without prejudice will risk any subsequently filed federal petition being time barred, causing Petitioner to be unable to obtain federal relief. Id. at 275. Pursuant to AEDPA, 28 U.S.C. § 2244(d), there is a one-year statute of limitations for § 2254 petitions that runs from the latest of:

> (1)(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Under § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." Petitioner was resentenced on October 19, 2012, and his conviction became "final" when the thirty-day period to appeal expired. O.C.G.A. § 5-6-38(a) ("A notice of appeal shall be filed within 30 days after entry of the appealable decision or judgment complained of."). Thus, Petitioner's conviction became final around November 2012, at the very latest. O.C.G.A. § 5-6-38(a).

Petitioner then had one year to file his federal habeas corpus petition or take other action to toll the one-year limitations period. The Court recognizes that, pursuant to 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for state post-conviction relief or other collateral review is pending in state court. Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1383 (11th Cir. 2006). Petitioner filed his state habeas petition on June 12, 2013, and, after the state habeas court denied the petition, the Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal on August 20, 2018. (Doc. nos. 16-1, 16-6.) Thus, if the Court denies Petitioner's present petition without prejudice, any further federal petition may be subject to denial under the one-year statute of limitations.

AEDPA describes three situations which may delay or reset its one-year statute of limitations: (1) a newly discovered factual predicate for a petitioner's claim which could not have been discovered earlier through the exercise of due diligence; (2) the State has created some "impediment" to filing the application; or (3) the petitioner asserts a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. §§ 2244(d)(1)(B) – (D) (quoted *supra*). Although the first exception may apply, the Court cannot say with confidence it would and a stay is therefore the safest course of action.

After examining the three factors set forth in Rhines, the Court finds a stay and

16

abeyance is appropriate because Petitioner has demonstrated "good cause" for failing to exhaust the claims in state court, the exhausted claims are "potentially meritorious," and there is no indication Petitioner engaged in intentionally dilatory litigation tactics. 544 U.S. at 277-78.

The Supreme Court and the Eleventh Circuit have not specifically defined what constitutes "good cause" under Rhines.  Schwindler v. Holt, CV 416-189, 2018 WL 2091364, at *2 (S.D. Ga. Mar. 27, 2018), *adopted by* 2018 WL 2087248 (S.D. Ga. May 4, 2018).  However, courts within the Eleventh Circuit have defined good cause liberally, finding good cause existed where an external "objective factor" not attributable to a petitioner caused his failure to exhaust, and where a *pro se* petitioner had reasonable confusion over the legal nuances of an ineffective assistance of trial counsel claim. See id.; Daly v. Jones, No. 3:15CV189/MCR/EMT, 2016 WL 3247614, at *3 (N.D. Fla. May 12, 2016), *adopted by* 2016 WL 3248385 (N.D. Fla. June 13, 2016); Cueto v. McNeil, No. 08-22655-CIV, 2010 WL 1258065, at *13 (S.D. Fla. Mar. 12, 2010), *adopted by* 2010 WL 1258088 (S.D. Fla. Mar. 30, 2010).  Another district court within the Eleventh Circuit has concluded a petitioner did not establish "good cause" where he failed to provide any "legitimate reason" for his delay in raising the unexhausted claims.  Henry v. McDonough, No. 07-61281-CIV, 2009 WL 762219, at *3 (S.D. Fla. Mar. 19, 2009).

The Court finds good cause for Petitioner's failure to exhaust his ineffective

17

assistance of counsel claims. Although Petitioner attempted to obtain all relevant information about his case prior to filing his first habeas petition, he did not obtain the potentially impeaching evidence regarding Mr. Owen's criminal history until he received the February 27, 2017 letter from Mr. Johnson. (Doc. no. 8, pp. 4-8.) By then, the state habeas court had already denied Petitioner's state habeas petition and his request for a certificate of probable cause to appeal had been pending before the Georgia Supreme Court for approximately ten months. (Doc. nos. 16-4, 16-5.) Given the uncertainty over whether Petitioner could assert his new claims in a successive petition or was procedurally barred from doing so, the Court finds good cause for Petitioner's failure to exhaust claims in Grounds Six and Seven.

Regarding the second factor, Petitioner's unexhausted claims are "potentially meritorious." Rhines, 544 U.S. at 278. In determining whether unexhausted claims are potentially meritorious, a court does not weigh or even consider the evidence in the case and merely accepts a petitioner's allegations as true for purposes of the analysis. Cueto, 2010 WL 1258065 at *13. Under this deferential standard and accepting Petitioner's allegations as true, it appears Petitioner's claims in Grounds Six and Seven could create a colorable basis for habeas relief.

Finally, there is no evidence Petitioner engaged in intentionally dilatory litigation tactics in failing to bring these claims in his first state habeas petition. Accordingly, the

18

Court should stay, rather than dismiss, the § 2254 petition to allow Petitioner to exhaust his unexhausted claims.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** this action be **STAYED AND HELD IN ABEYANCE** while Petitioner exhausts his state remedies. The Court should order Petitioner to commence state proceedings within sixty days of the stay entry, file a notice of compliance concerning commencement within sixty days of the stay entry, and move to lift the stay within sixty days of completing state exhaustion in the event the state courts determine Petitioner is not entitled to relief.

SO REPORTED and RECOMMENDED this 6th day of August, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA